GERALD P. BAGLEY & another[1] *vs.* MICHAEL R. MOXLEY.[2]

Suffolk. January 8, 1990. - June 13, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Res Judicata. Adverse Possession and Prescription. Practice, Civil,*
   Dismissal.

Plaintiffs who stipulated to dismissal with prejudice of their action assert-
   ing ownership of certain real property were barred, by principles of
   claim preclusion, from litigating a subsequent claim of adverse posses-
   sion with respect to the same land and against the same parties, where
   that claim was capable of being raised and should have been raised in
   the earlier action. [637-639]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 2, 1987.

The case was heard by *Guy Volterra*, J., on a motion to
dismiss.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Anita S. Lichtblau* (*Marguerite T. Grant* with her) for the
plaintiffs.

*Alan M. Cohen* for the defendant.

LIACOS, C.J. On April 27, 1987, the plaintiffs, Gerald P.
Bagley and Patricia A. Bagley, brought suit in the Superior
Court in Suffolk County seeking to annul three related deci-
sions of the board of appeal of the city of Boston which
granted zoning variances to the Gordon Medford Realty
Trust (Gordon Medford). These variances allowed Gordon
Medford to begin construction of three multi-unit apartment
buildings on land abutting property owned by the plaintiffs.

---

[1]Patricia A. Bagley.

[2]As trustee of the Cliffmont Realty Trust.

On June 2, 1988, in response to a motion brought by Gordon Medford, a judge ordered the plaintiffs to post a $100,000 bond in order to continue with the case. See St. 1956, c. 665, § 11. We shall refer to this case as *Bagley I*. The plaintiffs, rather than posting the requisite bond, stipulated to a dismissal of *Bagley I* with prejudice and without costs.

On August 13, 1987, the plaintiffs filed another complaint in the Superior Court. In that case (*Bagley II*), the plaintiffs brought suit against Gordon Medford and the public improvement commission of Boston (commission) to challenge the commission's decision to open a section of land in West Roxbury and Hyde Park, known as Grew Avenue, to public travel. Gordon Medford intended to use Grew Avenue for access to and from the proposed apartment complex which was the subject matter of *Bagley I*.

In *Bagley II*, the plaintiffs claimed that they owned a section of Grew Avenue which lay adjacent to the plaintiffs' property. The plaintiffs argued that the commission's decision to open Grew Avenue for public travel was illegal because it constituted a taking of the plaintiffs' property without due process of law. The plaintiffs' complaint referred to a certificate of title issued in 1976, which, according to the plaintiffs, entitled them to ownership in fee simple of land "to the midline of Grew Avenue." In par. 10 of their complaint, the plaintiffs also stated that "[they] have, since 1957, mowed the lawn and parked their cars on the portion of their property which constitutes, on paper, Grew Avenue. They have also blocked vehicular passage over that property by placing large boulders and concrete blocks at the northern edge of the property." On September 3, 1987, the plaintiffs stipulated to a dismissal of *Bagley II* with prejudice and without costs.

Less than a month later, on October 2, 1987, the plaintiffs were again in Superior Court, this time with a complaint alleging ownership of the contested section of Grew Avenue by

way of twenty-nine years of adverse possession.[3] This case, which is the subject matter of the present appeal, we refer to as *Bagley III*.

In their complaint in *Bagley III*, the plaintiffs claimed that between 1958 and 1987 they had "bulldozed and leveled the land on the Parcel and planted grass there. They have cut the grass on the Parcel at least once a month during the summer. Plaintiffs have parked their cars on the Parcel each year. Plaintiffs have also picnicked and held cookouts on the Parcel. In all respects, plaintiffs have treated the Parcel as their own. . . . Plaintiffs have never received permission to use, visit or occupy the Parcel." Such activity, claimed the plaintiffs, constituted "nonpermissive, hostile, actual, open, notorious, adverse and exclusive" use of the land for a period sufficient to establish the plaintiffs as the rightful owners of the land due to their adverse possession.

The defendant, trustee of Cliffmont Realty Trust, filed a motion to dismiss the plaintiffs' complaint in *Bagley III* on the ground of the doctrine of res judicata. The defendant argued that the issue of the plaintiffs' adverse possession had been raised in *Bagley II*, which was dismissed with prejudice, and that the plaintiffs therefore were barred from attempting to relitigate this issue in *Bagley III*. On October 15, 1987, a judge of the Superior Court allowed the defendant's motion to dismiss, stating that "[t]he action brought by the plaintiff is barred as it raises the same claim raised by par. 10 of [the complaint in *Bagley II*], which has been dismissed with prejudice, and it involves the same parties who are bound by that prior judgment." On September 16, 1988, the judge entered partial final judgment on the dismissal of the plaintiffs' complaint.[4] The plaintiffs appealed the entry of partial final

---

[3] The plaintiffs' complaint named as defendant Suzanne S. Gordon, the trustee of Gordon Medford. On March 14, 1988, by stipulation of the parties, Cliffmont Realty Trust was substituted for Gordon Medford as the defendant in *Bagley III*. See note 2 *supra*.

[4] On appeal, the defendant claims that the judge erred in granting the entry of partial final judgment pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). "The entry of such [an order] presents a matter for the

judgment to the Appeals Court. We took the case on our own motion. We affirm the judgment.

The plaintiffs argue that no adverse possession claim was pleaded, litigated, or determined in *Bagley II*, and that therefore the judge erred in concluding that the doctrine of res judicata barred consideration of the adverse possession claim in *Bagley III*. Furthermore, the plaintiffs contend that their adverse possession claim may not be barred on the ground that, even though not raised in *Bagley II*, it should have been raised in *Bagley II*. Finally, the plaintiffs suggest that, even if there is merit to the argument that the doctrine of res judicata bars the adverse possession claim, this court should utilize its equitable powers so as to allow their complaint in *Bagley III* to proceed.

" 'Res judicata' is the generic term for various doctrines by which a judgment in one action has a binding effect in another." *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). This court has recognized that "[t]he doctrine[ ] of res judicata . . . [is] most important in assuring that judgments are conclusive, thus avoiding relitigation of issues that were or could have been raised in the original action." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 449 (1982). Application of the doctrine may serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*, quoting *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980).

The phrase "res judicata" encompasses both the doctrine of "claim preclusion" and the doctrine of "issue preclusion." *Heacock* v. *Heacock*, *supra* at 23 n.2. " 'Claim preclusion' is the modern term for the doctrines traditionally known as 'merger' and 'bar,' and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies. 'Issue

---

trial court's discretion." *Acme Eng'g & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 (1980). We perceive nothing in the record below to convince us that the judge abused his discretion in the present case. The entry of partial final judgment was not error.

preclusion' is the modern term for the doctrine traditionally known as 'collateral estoppel,' and prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock, supra.* See *Cousineau* v. *Laramee*, 388 Mass. 859 (1983); *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc., supra*; *Foster* v. *Evans*, 384 Mass. 687, 694-696 (1981).

"The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Heacock* v. *Heacock, supra* at 23. See *Willett* v. *Webster*, 337 Mass. 98, 102 (1958).

Neither the plaintiffs nor the defendant disputes that both *Bagley II* and *Bagley III* involved the same parties or their privies. See *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933). Furthermore, the parties do not contest that, for the purposes of res judicata analysis, the dismissal with prejudice of *Bagley II* constituted "an adjudication on the merits as fully and completely as if the order had been entered after trial." *Boyd* v. *Jamaica Plain Co-op. Bank*, 7 Mass. App. Ct. 153, 157-158 n.8 (1979). Therefore, the only issue before us is whether the plaintiffs' adverse possession claim was raised or should have been raised in *Bagley II*. See *Heacock* v. *Heacock, supra* at 23.

The plaintiffs, in support of their argument that their adverse possession claim was not raised in *Bagley II*, point to the fact that their complaint in that case does not contain the phrase "adverse possession." They argue that their claim of ownership of the disputed land in *Bagley II* was based entirely on their certificate of title[5], and cite to language in their complaint in *Bagley II* which states that "[b]y virtue of their Certificate of Title . . . Plaintiffs own to the midline of

---

[5]See G. L. c. 185, § 53 (1988 ed.), which provides: "No title to registered land, or easement or other right therein, in derogation of the title of the registered owner, shall be acquired by prescription or adverse possession." In the view we take of this case, we need not consider whether § 53 barred the plaintiffs' claims under either their second or third complaints.

Grew Avenue in fee simple." The defendant, on the other hand, claims that the language of par. 10 of the complaint, described above, provides a prima facie case of adverse possession, see *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964), and argues that par. 10 presents clear evidence that an adverse possession claim was raised in *Bagley II*. We find it unnecessary, however, to determine whether an adverse possession claim was actually presented in *Bagley II* because we believe that this claim was capable of being raised in *Bagley II* and should have been raised in the context of that case. As such, it is barred from relitigation in *Bagley III*. See *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc., supra* at 449; *Franklin* v. *North Weymouth Coop. Bank, supra* at 280.

The gravamen of the plaintiffs' complaint in both *Bagley II* and *Bagley III* was the same; the plaintiffs claimed ownership of the disputed land. Because this was the primary issue in dispute, it was incumbent on the plaintiffs to present to the court in *Bagley II* all of the legal theories on which they based their claim of ownership. The plaintiffs were not entitled to pursue their claim of ownership through piecemeal litigation, offering one legal theory to the court while holding others in reserve for future litigation should the first theory prove unsuccessful. Claim preclusion applies "even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim." *Heacock* v. *Heacock, supra* at 23. This is so because "the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit." *Foster* v. *Evans, supra* at 696 n.10, quoting A. Vestal, Res Judicata/Preclusion V-401 (1969).

Were we to allow the plaintiffs' claim to continue, we would have to turn a blind eye to "[c]onsiderations of fairness and the requirements of efficient judicial administration [which] dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim." *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974). This we will not do. "Public policy dictates that there be an end of

litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Id.*, quoting *Baldwin* v. *Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931).

In the present case, the plaintiffs have had their "day in court" against the defendant. We perceive no reason to disturb the judge's decision to deny the plaintiffs' attempts to obtain another. Accordingly, we affirm.

*Judgment affirmed.*